**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT O'TOOLE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 11 C 4611 |
| | ) | |
| v. | ) | Judge Shadur |
| | ) | |
| SEARS ROEBUCK AND CO., et al., | ) | Magistrate Judge Cole |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a wage-and-hour lawsuit brought under 29 U.S.C. 216(b). It has been conditionally certified as a class action. To date, we are told that over 700 individuals filed consent forms to join the class. The plaintiffs want to limit discovery as follows: written discovery to 20% of opt-ins with each side selecting 10%; depositions of 10% of opt-ins with each side selecting 5%. The defendant seeks unlimited written individualized discovery, and depositions of up to 75 opt-ins, arguing it is necessary to their attempt to decertify the class.

This is the plaintiffs' second attempt at a motion for a protective order. In the first, they ignored Local Rule 37.2 and essentially disregarded a court order issued just a week earlier that detailed the required procedures for all discovery motions. Since that time, the parties state they have met and conferred in good faith on these issues. But that claim is at odds with the results of the conference. While the required joint report submitted by the parties specifies time spent on various aspects of the disagreement, in the end, the parties have not budged on anything.[1]

---

[1] Inexplicably, the parties continue to refer to their exchange of emails as part of the process required by Rule 37.2. But the explicit terms of the Rule exclude email communications and require conference in person or by phone.

Inability to reach a compromise in any given case does not necessarily mean that the negotiations were not conducted in good faith. For example, a party who wants to take the deposition of every single one of, say, 1000 opt-ins, is not acting in bad faith if he refuses to agree that only two opt-ins should be deposed. But in this case, the disputes are so insignificant and the gap between the positions so infinitesimally small, that one may fairly question the spirit in which the meetings were conducted. Or, at the very least, one may question the good sense of the negotiators.

Here is a perfect example: At the beginning of February, plaintiffs wanted depositions limited to 10% of the over 700 opt-ins, while defendant wanted 75 depositions. But unless I am missing something, that translates into a dispute over fewer than 5 depositions.[2] It is mystifying how responsible lawyers could not have agreed on something so simple. In connection with this dispute, a flip of a coin is as inspired and as effective a solution as is a decision by the wisest of judges.

It must not be forgotten that an exercise of discretion involves a selection among possible points along a spectrum. *Ponsetti v. GE Pension Plan*, 614 F.3d 684 (7th Cir. 2010). Thus, on the same record, two judges can select different points on the spectrum, and both decisions be appropriate exercises in discretion. *United States. v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008). By what rational measure is a judge to choose between 70 and 75 depositions? Either is a permissible point on the spectrum. Is 71 a better number than 74? Or perhaps 72 is the right number. Or, perhaps, there should be no accommodation. But how does one decide whether to pick the higher or the lower number. Ultimately, there is no objective formulation that one can use.

---

[2] The defendants at least have recognized the *de minimus* nature of the controversy. (*Plaintiff's Motion for Protective Order, Ex. A* at 15-16).

These same observations apply to the duration of depositions. The plaintiffs wanted depositions limited to three hours while defendant wanted depositions lasting five hours. Again, they could not find a middle ground in all this time. They apparently were unwilling to compromise at 4 hours, leaving it to me to do what common sense and good faith dictated they should have done in the first place. Requiring a judge to resolve these sorts of disputes not only wastes the client's money and the lawyers' time, it imposes a burden on the judicial system. Every hour needlessly spent in a case is an hour squandered and is an hour needlessly taken from those litigants whose cases truly need judicial input. *See Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991)("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention.").

This is a problem that the Seventh Circuit has repeatedly adverted to. *See, e.g., Otto v. Variable Annuity Life Insurance. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987). *Compare Wehrs v. Wells* 688 F.3d 886, 890 (7th Cir. 2012)("We apply a deferential standard of review [to motions to vacate default] because the district court is 'the forum best equipped for determining the appropriate use of default to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not in an environment of limited judicial resources.'").

Oblivious to these concerns, the parties unashamedly have left it to me to split the differences for them. Each cites cases that to a greater or lesser degree arguably support their positions. What the cases show is that there is no right answer to the questions the parties have presented to me. Being discretionary calls by judges presented with different facts and approaching their tasks from

3

different perspectives, the cases provide little help beyond broad general outlines. The only thing that they reveal is that there is no universally accepted method for handling discovery in cases like this. Some courts have allowed class-wide, individualized discovery. *Stickle v. SCI Western Market Support Center, L.P.*, 2010 WL 3218598, 1 (D.Ariz. 2010)(allowing 11 interrogatories to 1400 opt-ins); *Evans v. Lowe's Home Centers, Inc.,* No. 3:03 CV 0438, 2005 WL 2100708, at *1 (M.D.Pa. 2005) (court approval of written discovery directed to all 508 opt-in plaintiffs); *Coldiron v. Pizza Hut, Inc.,* 2004 WL 2601180 (C.D.Cal. 2004)(permitting individualized discovery to all 306 opt-in plaintiffs). After all, unlike class members in a Rule 23 class action, opt-in plaintiffs in a collective action have affirmatively decided to become plaintiffs and thus are full parties. 29 U.S.C. § 216(b); *Medina v. Happy's Pizza Franchise, LLC*, 2012 WL 1094353, 5 (N.D.Ill. 2012)*; Oropeza v. AppleIllinois, LLC,* No. 06 C 7097, 2010 WL 3034247, at *4 (N.D.Ill. 2010) (class action members generally are not subject to individual discovery because they are permitted to remain outside of the litigation; by contrast, opt-in plaintiffs in collective actions generally are subject to discovery).

Not surprisingly, though, as the size of the class increases, the cases allowing individualized discovery grow fewer and farther between. Aside from *Stickle* and, arguably, *Evans*, there do not appear to be any cases allowing interrogatories to a class nearly as large as the one here. The more common approach in cases involving larger classes is to allow discovery on a representative basis. *See, e.g., Adkins v. Mid-America Growers, Inc.,* 143 F.R.D. 171, 174 (N.D.Ill. 1992); *Russell v. Ill. Bell Tel.,* No. 2009 WL 1209025, at *1 (N.D.Ill. 2009)(allowing defendant to depose 39 of 522 FLSA opt-in plaintiffs); *Rindfleisch v. Gentiva Health Servs., Inc.,* 2011 WL 7662026, at *3–5 (N.D.Ga. 2011) (permitting defendant to depose 35 of 1,100 opt-ins and propound written discovery upon 60 opt-ins); *Cranney v. Carriage Servs., Inc.,* 2008 WL 2457912, at *2–3 (D. Nev.

4

2008)(limiting individualized discovery to 10% of the opt-ins because doing otherwise would "undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources").

Neither party in this case has offered a particularly convincing argument in favor of their position. For its part, the plaintiffs mischaracterize the burden of class-wide discovery, referring to "14,000 Interrogatories and Request [sic] for Production." In fact, each class member would be subjected to just 7 interrogatories and 17 requests for production. This is not much of a burden, and it is one that the plaintiffs have voluntarily chosen to endure by virtue of opting in. The burden, in any event, is more on the attorneys.

It is true that some courts have considered the burden on counsel as a factor to support restricting written discovery to a representative sample. *See Adkins v. Mid–America Growers, Inc.*, 141 F.R.D. 466, 468–69 (N.D.Ill.1992) (referring to "tremendous burden" of such individualized discovery on plaintiffs' counsel); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 358 (S.D.Ohio 2006)(assuming counsel help each opt-in prepare their answers, individualized discovery to 1500 opt-ins). But, by the same token, "[p]laintiffs can hardly be heard to complain about the cost, burden and difficulties associated with defendants' discovery when they chose to pursue an extensive class. Plaintiffs knew 'what they were in for' when they filed the case." *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013). As the attorneys in this matter cannot resolve a dispute over whether there should be 72 depositions or 75, they are not particularly sympathetic figures, entitled to special consideration.

The defendant doesn't fare any better, simply referring to some unspecified hardship it would suffer if denied individual written discovery of the entire class. Left unanswered is why defendants

5

need discovery from every single one of the opt-ins, and why discovery from 75% or 50% or even plaintiffs' proposed 20% would not suffice. In cases like these, much of the information the defendant needs is likely already in its control. *Goodman*, 292 F.R.D. at 234. Clearly, individualized discovery from the entire class of over 700 is going to be needlessly unwieldy and needlessly burdensome.

Of course, one can make the argument that more is better and as a generality that may hold true. But it is not a basis for a reasoned decision, for it would, in all cases, trump all other considerations. It would result in a rule precluding any exercise of discretion. And in any event, since *Hickman v. Taylor,* 329 U.S. 495 507- 08 (1947), there have been ultimate and necessary boundaries on discovery. *See also United Air Lines, Inc. v. United States*, 26 F.R.D. 213, 219 n.9 (D.Del.1960)("it is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases.").

The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D.Ill.1994)(Moran, J.). There is no reason to think that the defendant in this case could not accomplish what it needs to do with discovery from a lesser number of opt-ins than it is demanding. One ought not to facilitate attempts by large corporations to grind down individual plaintiffs in cases like this.

And so, with neither party's position being particularly compelling, the idea will be to effect a balance between burden and access to information. As such, written discovery shall be limited to 33% of the opt-ins. This will strike a balance between allowing the defendants a large enough

6

sampling of the class to be meaningful and limiting the workload on plaintiffs' counsel. As for the selection of the opt-ins, the plaintiffs offer no reason why they should be involved in the selection process at all, and reasons readily come to mind why they should have no role to play in that process. It makes no difference in terms of burden – that is the plaintiffs' main concern, after all – how or by whom the discovery targets are chosen. The defendant should be able choose the opt-ins from whom it seeks written discovery. *See Goodman*, 292 F.R.D. at 233; *Jones v. Hoffberger Moving Services LLC*, 2014 WL 713541, 3 (D.Md. 2014).

The considerations are similar with regard to the number of depositions. Depositions are clearly more burdensome than written discovery. The difference between plaintiffs' proposal of 10% of the opt-ins and defendant's proposal of 75 depositions is negligible, to say the least. It is an issue that should never have come before the court for resolution. The defendant can depose up to 10% of the opt-ins. As with the written discovery, the selection of deponents will be left to the defendant, who "ha[s] the right to depose who [it] want[s]." *Goodman*, 292 F.R.D. at 233; *Russell v. Illinois Bell Telephone Co.*, 2009 WL 1209025, 2 (N.D.Ill. 2009)(giving defendants the opportunity to choose the "vast majority" of deponents).

There is generally a fair amount of wasted time in depositions, and most often, the deponent is burdened because the examiner does not get to the point. *See Shell v. Henderson*, 2013 WL 1631999, 1 (D.Colo. 2013); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2011 WL 4526137, 1 (S.D.N.Y. 2011); *Ames v. Black Entertainment Television*, 1998 WL 812051, 9 (S.D.N.Y. 1998); *Burck v. Lykes Bros. S.S. Co., Inc.*, 1988 WL 41450, 3 (E.D.Pa. 1988). Assuming that will not happen here, depositions shall be four hours – which is midway between 3 and 5 – the number of hours the parties obdurately continue to insist on despite their claim that they negotiated

7

this problem in good faith. If three hours is fine with plaintiffs, the additional hour is not a significant additional burden. In the context of this case, four hours is more than sufficient.

The amount of time and effort that the lawyers spent on the issues raised in the motion for a protective order and the adverse consequences to other litigants in the system are unfortunate and were avoidable. "[Disputes] like this one cast the legal profession in a bad light...." *Purtell v. Mason,* 527 F.3d 615, 627 (7th Cir.2008). *See also Westfield Insurance. Co. v. Sheehan Const. Co., Inc.*, 564 F.3d 817, 820 (7th Cir. 2009)("lawyers should think carefully about the message that their contentions convey to the court...."). Nonetheless. like Judge Gettleman, I continue to believe "we can do better." Robert Gettleman,"We Can Do Better." 25 LITIGATION 3 (Summer 1999).

The plaintiffs' motion for a protective order is GRANTED in part and DENIED in part. The defendant may select up to 33% of the opt-in plaintiffs on whom to serve written discovery, consisting of 7 interrogatories without subparts and 17 requests for production. The defendant may select up to 10% of the opt-in plaintiffs to depose. Depositions shall be limited to four hours.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/10/14