## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROBERT O'TOOLE, et al.;** | § | |
| **Individually and on behalf of all others** | § | |
| **similarly situated;** | § | |
| | § | **Case No.: 1:11−cv−04611** |
| **Plaintiffs,** | § | **Honorable Milton I. Shadur** |
| | § | **Magistrate Judge Jeffrey Cole** |
| **vs.** | § | |
| | § | |
| **SEARS ROEBUCK AND CO., et al.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### PLAINTIFFS' UNOPPOSED[1] MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No.24078444
Joseph C. Melugin (ARDC #6302521)
**FIBICH, LEEBRON, COPELAND,**
**BRIGGS & JOSEPHSON, L.L.P**
1150 Bissonnet
Houston, Texas 77005
713-751-0025 (Telephone)
713-751-0030 (Facsimile)

Douglas M. Werman (ARDC #6204740)
Maureen Salas (ARDC #6289000)
**WERMAN SALAS LAW OFFICE, P.C.**
77 West Washington Street, Suite 1402
Chicago, IL 60602
312-419-1008 (Telephone)

ATTORNEYS IN CHARGE FOR PLAINTIFFS

---

[1] Although Defendants do not oppose this motion or the certification of the classes as described herein **for settlement purposes only**, they reserve the right to oppose certification on all grounds in the event that the court does not approve this settlement.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................iv-vi

I.      INTRODUCTION ............................................................................... 1-4

II.     OVERVIEW ............................................................................ 4

III.    GENERAL TERMS OF SETTLEMENT.................................................4-10

      1.      CLASS DEFINITIONS UNDER THE FLSA AND FED. R. CIV. P. 23…..………...5

      2.      SETTLEMENT AMOUNT ..………..……..……….....……..…….. 6

      3.      ATTORNEY'S FEES AND COSTS ……………………………..…………...6

      4.      PAYMENTS TO NAMED CLASS REPRESENTATIVES ..……..……………… 7

      5.      FEES, COSTS AND EXPENSES OF THE ADMINISTRATOR … ……....………7

      6.      LWDA………………………………….. …...………....……...…….. ..……7

      7.      RESERVE FUND………………………….. ……………………….……7

      8.      DISTRIBUTION TO CLASS MEMBERS ………..…………………….………8

      9.      ADMINISTRATION OF NOTICE, OPT-OUT,
            OPT-IN AND OBJECTIONS PROCESS ………..………..………..……9-10

      10.     PAYMENTS BY DEFENDANTS TO AUTHORIZED CLAIMANTS,
              ADMINISTRATOR AND CLASS COUNSEL ……....……....…………..……..10

      11.     RELEASE OF CLAIMS ……..……….. …… ………..………..……………..10

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .........11-26

      1.      THE SETTLEMENT SHOULD BE
            PRELIMINARILY APPROVED BY THE COURT ...…………..……………...11

      2.      THE STANDARDS FOR PRELIMINARY
            APPROVAL UNDER FED. R. CIV. P. 23 ..……...……...………………11-22

            A.      THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL
                 ARE SATISFIED ..……………………………….....................13-17

(1)      Strength of Plaintiffs' Case As Compared to the
Amount of the Settlement and Allocation of the
Settlement Payment…………………….…....……13-15

(2)      The Likely, Complexity, Length and
Expense of Continued Litigation…..……………..…....……15

(3)      The Opinion of Competent Counsel…………….…....……16

(4)      The State of the Proceedings and Discovery
Completed…..……..………………….…....……16-17

B.      THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF RULE
23(A) AND RULE 23(B)(3) AND SHOULD BE CERTIFIED...……..17-22

(1)      Numerosity...……….………….…….....…….....……17-18

(2)      Commonality...……….....………..…….…….…......18-19

(3)      Typicality……..……….…….……....…….......……...20

(4)      Adequacy………...………...……….…....…….….......20-21

a.  Plaintiffs' Counsel is Experienced and Qualified…........20

b.  There is No Conflict of Interest Between Named
Plaintiffs and the Class………………………….......20-21

(5)      Rule 23(b)(3) Requirements Have Been Satisfied…...21-22

3.      THE SETTLEMENT SHOULD ALSO BE APPROVED
UNDER THE FLSA...………....…………….……….…....……….....22-23

4.      THE PROPOSED NOTICES PROVIDE ADEQUATE NOTICE TO THE
MEMBERS OF EACH CLASS...…………….....…………….……………23-25

A.      THE NOTICE SATISFIES DUE PROCESS...……...……….....……23-24

B.      THE NOTICE IS ACCURATE, INFORMATIVE AND EASY
TO UNDERSTAND...……………………………………....24-25

5.      A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED……..……………25

6.      SCHEDULE OF EVENTS……………………….……….……………25-26

V.     CONCLUSION...............................................................................26-27

iii

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591, 617 (1997) ........................................................................... 12, 17, 21-22

*Benjamin v. Kmart Corporation*,
C.A. 4:05-cv-182, (S.D. GA. July 17, 2006) ............................................... 14

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656, 660 (7th Cir. 2004) .............................................................. 17, 21

*Cook v. McCarron*,
1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) ......................................... 12

*Davis v. Abercrombie & Fitch Co.*,
No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) ................ 24

*Doe v. Guardian Life Ins. Co. of Am.*,
145 F.R.D. 466, 471 (N.D. Ill. 1992) .......................................................... 18

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884, 889 (7th Cir. 1985) ............................................................. 13

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*,
212 F.R.D. 400, 410 (E.D. Wis. 2002) ....................................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1019 (9th Cir. 1998) .......................................................... 18, 22

*Hispanics United of DuPage County v. Village of Addison, Ill.*,
988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997) ............................................. 12

*In re M.L. Stern Overtime Litig.*,
No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) ............24

*In re Mexico Money Transfer Litigation*,
164 F. Supp. 2d 1002, 1019-1020 (N.D. Ill. 2000) ..................................... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283, 326-27 (3d Cir. 1998) .......................................................... 24

*Isby v. Bayh*,
75 F.3d 1191, 1199 (7th Cir. 1996) ............................................................ 12-13

*Keele v. Wexler,*
149 F.3d 589, 595 (7th Cir. 1998) ........................................................................ 20

*Krueger v. New York Tel. Co.*,
163 F.R.D. 433, 443 (S.D.N.Y. 1995) .................................................................... 21

*Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,*
679 F.2d 350, 1353 (11th Cir.1982) ...................................................................... 23

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
834 F.2d 677, 682 (7th Cir. 1987) ........................................................................ 13

*Martens v. Smith Barney, Inc.,*
181 F.R.D. 243, 259 (S.D.N.Y. 1998) .................................................................... 21

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620, 624-25 (5th Cir. 1999) .................................................................... 19

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,*
390 U.S. 414, 424-25 (1968) ................................................................................ 11

*Retired Police Ass'n v. City of Chicago*,
7 F.3d 584, 596 (7th Cir. 1993) ............................................................................ 20

*Rosario v. Livaditis,*
963 F.2d 1013, 1017 (7th Cir. 1992) .................................................................... 17

*Ross v. Citizens Bank, N.A.,*
667 F.3d 900, 908 (7th Cir. 2012) ........................................................................ 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646, 653 (7th Cir. 2006) ........................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 2545 (2011) ...........................................................................18-19

*Williams v. First Nat'l Bank,*
216 U.S. 582, 595 (1910) ...................................................................................... 11

*Wright v. Linkus Enters., Inc.*,
No. 2:07-cv-01347-MCE Case 26 CMK (E.D. Cal. July 29, 2009) .......................... 24

*Yon v. Positive Connections, Inc.,*
No. 04 C 2680, 2005 WL 628016, at *2 (N.D. Ill. Feb. 2, 2005) ............................ 18

*Youngblood v. Family Dollar Stores, Inc.*,
2011 U.S. Dist. LEXIS 115389, at *8 (S.D.N.Y. Oct. 4, 2011) .................................................. 19

*Zinberg v. Washington Bancorp, Inc.*,
138 F.R.D. 397, 405 (D.N.J. 1990) ................................................................................................ 18

## STATUTES

28 U.S.C. §1715(d) ......................................................................................................................... 25

29 U.S.C. §201 ................................................................................................................................. 1

29 U.S.C. §216(b) ............................................................................................................... 1, 5, 22-24

Fed. R. Civ. P. 23 ..................................................................................................................... *passim*

## MISCELLANEOUS AUTHORITIES

4 *Newberg on Class Actions* (Fourth) §§ 8.21, 8.39 ..................................................................... 25

MANUAL FOURTH § 21.312 ........................................................................................................ 25

Plaintiffs Robert O'Toole, et al., ("Plaintiffs" or "Named Plaintiffs") file this Unopposed Motion for Preliminary Approval of Settlement and in support would show as follows:

## I.   <u>INTRODUCTION</u>

Plaintiffs seek provisional and preliminary certification for settlement purposes of various settlement classes of current and former salaried exempt Loss Prevention Managers ("LPM") who worked for Defendants Sears, Roebuck and Co. and/or Kmart Corporation (collectively, together with Sears Holdings Management Corporation, "Defendants" or "Sears throughout the United States during the relevant statutory time periods. The claims pertain to the classification of the LPM position under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and the analogous state wage and hour laws of California, Illinois, New Jersey, New York[2], Oregon, Pennsylvania, and Washington. Plaintiffs seek preliminary approval of a settlement sum of $5,000,000.00. As shown below, the terms of the settlement are fair, reasonable, and confer a substantial benefit upon the members of each of the proposed classes. Declaration of Michael A. Josephson ("Josephson Decl."), ¶14 attached as Exhibit B.

In accordance with 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e), Plaintiffs request that the Court (a) grant preliminary approval of the terms of the settlement, including the proposed attorneys' fees and costs; (b) certify each of the proposed settlement classes; (c) approve the proposed notice plan; (d) set the deadline for filing objections to the settlement; and (e) schedule a final approval hearing, all as more specifically described below.

The major points of the settlement are as follows:

---

[2]    The New York state law class claims are limited only those LPMs who were employed in Sears full line stores during the relevant statutory time period.

1.      Defendants agree to pay a fixed sum up to Five Million dollars ($5,000,000.00) (the "Maximum Settlement Amount") to resolve all disputes and differences between Plaintiffs and Sears through the date of Preliminary Approval.

2.      For purposes of settlement, the parties seek certification of the following classes[3]:

a.      All Existing FLSA Opt-Ins who have filed timely and valid consent to join forms in the *O'Toole* or *Nowalski* actions as of July 14, 2014[4];

b.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store in California at any time from April 2, 2009 through the date of Preliminary Approval (the "California Class");

c.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store in Illinois at any time from April 2, 2009 through the date of Preliminary Approval (the "Illinois Class");

d.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store at any time in Pennsylvania from April 2, 2009 through the date of Preliminary Approval (the "Pennsylvania Class");

e.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store in Washington at any time from April 2, 2009 through the date of Preliminary Approval (the "Washington Class");

f.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store in New Jersey at any time from April 2, 2010 through the date of Preliminary Approval (the "New Jersey Class");

g.      All persons who were employed as a Loss Prevention Manager in a Sears or Kmart store in Oregon at any time from April 2, 2010 through the date of Preliminary Approval (the "Oregon Class");

h.      All persons who were employed as a Loss Prevention Manager in a Sears store in New York at any time from April 2, 2006 through the date of Preliminary Approval (the "New York Class").[5]

---

[3]     For simplicity, these classes are often referred to collectively as the "Settlement Class" throughout this motion. Similarly, the members of each class are referred to as "Class Members."

[4]     As part of the settlement, the parties have agreed that all of the Opt-Ins in the pending *Nowalski* action will be permitted to join the *O'Toole* lawsuit. The parties have agreed that each individual's earliest opt-in date will govern for purposes of calculating their individual damages.

[5]     Plaintiffs are not seeking class certification of any Loss Prevention Managers who worked for Kmart stores in New York during the relevant statutory time period.

3.      Fibich, Leebron, Copeland, Briggs & Josephson, LLP and Werman Salas, P.C. ("Class Counsel") seek an award of attorney's fees in an amount not to exceed one-third of the Maximum Settlement Amount (One Million Six Hundred Sixty Six Thousand Six Hundred and Sixty Seven Dollars), in addition to the reasonable and necessary costs incurred through the final approval of the settlement (currently estimated to be no more than Two Hundred Thousand Dollars). All such sums are to be paid from funds included in the Maximum Settlement Amount.

4.      Named Plaintiffs who execute individual general releases will receive enhancement awards of $5,000.00 each.

5.      Rust Consulting, Inc. is to act as the Claims Administrator and will be paid from funds included in the Maximum Settlement Amount.

6.      The maximum payment by Defendants ("Maximum Settlement Amount") shall be "all inclusive," including payments to the eligible and participating Class Members; enhancement awards; interest, attorneys' fees, costs and expenses as approved by the Court; all of the fees, costs and expenses of the Claims Administrator in connection with settlement and claims administration; and all other settlement-related payments and costs.

This Motion is based on the attached documents:

Exhibit A:      Stipulation and Settlement Agreement

      Exhibit 1:      Class Notice

      Exhibit 1(A):  Claim and Consent to Join

      Exhibit 1(B):  Change of Name or Address

      Exhibit 1(C):  Cure Letter

      Exhibit 1(D):  Opt-Out Request Form

      Exhibit 2:      Compendium of State Wage and Hour Laws

Exhibit 3:     Preliminary Approval Order

Exhibit B:     Declaration of Michael A. Josephson

## II.   <u>OVERVIEW</u>

This $5,000,000.00 settlement resolves all current and potential litigation concerning the classification of the LPM position.  This settlement was reached after the parties participated in two mediations with Mark Rudy, a well-known and experienced wage and hour mediator, followed by five months of exhaustive post-mediation negotiations conducted by the parties. Josephson Decl., ¶11.

The settlement is the product of years of hard fought and extensive litigation by both parties.  Indeed, over forty depositions of various Plaintiffs, corporate officers, and other witnesses have been taken to date. *Id.* at ¶8.  Hundreds of class members have been interviewed. Hundreds of thousands of documents have been exchanged, reviewed and categorized. Countless hearings, conference calls and meetings have been conducted by both sides in courtrooms and offices throughout the country.  <u>*Id.*</u> Both parties have expended considerable time and resources in support of the various claims and defenses asserted in this case.

Thus, it can unequivocally be said that this settlement is the result of arm's length bargaining by competent counsel with extensive wage and hour experience, and a high level of familiarity and understanding of the relevant facts and legal issues applicable to these cases. The parties believe that the settlement is fair and reasonable and in the best interests of the Class Members.

## III.   <u>GENERAL TERMS OF SETTLEMENT</u>

Plaintiffs and Defendants have agreed, subject to approval by this Court, to enter into a Stipulation and Settlement Agreement.  The details of the settlement are contained in the

Stipulation and Settlement Agreement which has been attached as Exhibit A. The proposed settlement resolves all claims of the Plaintiffs and the proposed classes against Defendants. A summary follows:

### 1.    CLASS DEFINITIONS UNDER THE FLSA AND FED. R. CIV. P. 23

The parties have agreed for settlement purposes only that the following classes can be certified pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 ("Rule 23 Class Members"):

a.    All Existing FLSA Opt-Ins who have filed timely and valid consent to join forms in the *O'Toole* or *Nowalski* actions as of July 14, 2014;

b.    All persons who were employed by Sears as a Loss Prevention Manager in California at any time from April 2, 2009 through the date of Preliminary Approval;

c.    All persons who were employed by Sears as a Loss Prevention Manager in Illinois at any time from April 2, 2009 through the date of Preliminary Approval;

d.    All persons who were employed by Sears as a Loss Prevention Manager in Pennsylvania at any time from April 2, 2009 through the date of Preliminary Approval;

e.    All persons who were employed by Sears as a Loss Prevention Manager in Washington at any time from April 2, 2009 through the date of Preliminary Approval;

f.    All persons who were employed by Sears as a Loss Prevention Manager in New Jersey at any time from April 2, 2010 through the date of Preliminary Approval;

g.    All persons who were employed by Sears as a Loss Prevention Manager in Oregon at any time from April 2, 2010 through the date of Preliminary Approval;

h.    All persons who were employed as a Loss Prevention Manager in a Sears store in New York at any time from April 2, 2006 through the date of Preliminary Approval

2.    SETTLEMENT AMOUNT

The proposed settlement obligates Defendants to pay a maximum potential settlement amount of $5,000,000.00, which is "all inclusive."  Except as set forth below, under no condition will Defendants' liability for payments exceed this amount.  All claims submitted by members of each class set forth above, and all attorneys' fees, costs, LWDA civil penalties, enhancement awards, Reserve Fund, and claims administration expenses shall be paid out of the Maximum Settlement Amount or the Net Settlement Amount as defined below.  In addition to the Maximum Settlement Amount, Defendants shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions and unemployment taxes) including FUTA and the employer's share of FICA and Medicare taxes as required by law with respect to settlement payments to members of each proposed class.

Individuals who submit a timely and valid Claim and Consent to Join Form, Named Plaintiffs, and existing FLSA Opt-Ins who receive a share of the settlement ("Participating Claimants") shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made in accordance with this settlement.

3.    ATTORNEY'S FEES AND COSTS

Class Counsel will file an application for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this lawsuit and the finalization of this global settlement.  The fees requested will not exceed one-third of the Maximum Settlement Amount or One Million Six Hundred Sixty Six Thousand Six Hundred and Sixty Seven Dollars.

4.     **PAYMENTS TO NAMED CLASS REPRESENTATIVES**

Named Plaintiffs who execute an individual general release will each receive a $5,000.00 enhancement award from the Maximum Settlement Amount in addition to their share of the settlement as members of one or more of the proposed classes.

5.     **FEES, COSTS AND EXPENSES OF THE ADMINISTRATOR**

The parties have agreed to, and seek Court approval for, the appointment of Rust Consulting, Inc. as the settlement and Claims Administrator ("Claims Administrator"). The fees, costs and expenses of the Administrator shall be paid out of the Maximum Settlement Amount. The parties estimate that the administrative costs will not exceed $36,000.00.

6.     **LWDA**

As part of the settlement, the parties have agreed that $15,000.00 should be paid to the California Labor and Workforce Development Agency ("LWDA"). The $15,000.00 payment represents the civil penalties associated with the claims asserted by Named Plaintiffs Eddie Schwartz and Ramon Estrada on behalf of themselves and the California sub-class in accordance with the California Private Attorneys General Act, Labor Code §2699. This payment shall be deducted from the Maximum Settlement Amount.

7.     **RESERVE FUND**

As part of the settlement, the parties have agreed that $75,000 will be withheld from the Net Settlement Amount for Defendants to use at their discretion, to resolve the claims of other current or former LPMs who are covered by this settlement and who have pending or threatened federal or state overtime claims at the time this Stipulation is filed and/or to remedy any errors or disputes, in Defendants' sole discretion.

8. **DISTRIBUTION TO CLASS MEMBERS**

Participating Claimants will be entitled to a share of the Net Settlement Amount less the Reserve Fund. The Net Settlement Amount consists of the Maximum Settlement Amount less the Class Counsel's attorneys' fees and costs, administrative costs, enhancement awards, and the LWDA Payment.

Participating Claimants will be compensated from the sum arrived at from the Net Settlement Amount minus the Reserve Fund based on his/her workweeks (i.e., weeks for which the Claimant received pay from Defendants) as an LPM during his/her applicable statutory time period.

    a.    <u>Participating Claimants Outside of California</u>

    Weeks Worked x Workweek Amount = Payment

    Fifty percent (50%) of the total payment to that Participating Claimant shall be deemed payment in settlement of claims for unpaid overtime or other wages and is subject to appropriate deductions and withholdings for wages by the Claims Administrator. Fifty percent (50%) shall be deemed payment in settlement of claims for liquidated damages, interest, and all other non-wage income.

    b.    <u>Participating Claimants in California</u>

    Weeks Worked x Workweek Amount x 1.5 = Payment

    Fifty percent (50%) of the total payment to that Participating Claimant shall be deemed payment in settlement of claims for unpaid overtime wages, premium wages, or other wages, subject to appropriate deductions and withholdings for wages by the Claims Administrator. Fifty percent (50%) shall be deemed payment in settlement of claims for statutory and civil penalties, liquidated damages, interest, and all other non-wage income.

Except as otherwise provided in the Stipulation, Defendants shall fund the settlement only up to the extent necessary to cover all claims.

9.      ADMINISTRATION OF NOTICE, OP-OUT, OPT-IN AND OBJECTIONS PROCESS

The settlement provides for a notice program upon the Court's preliminary approval of the settlement and approval of the notice program. The parties propose to use Rust Consulting, an experienced Claims Administrator, to serve as the settlement administrator.

Within ten (10) business days after the Court issues a Preliminary Approval Order, Defendants shall provide to the Claims Administrator in electronic form, a list including the following information for each Class Member: each person's name, last known address, social security number, employee identification number, state(s) where employed, and the number of weeks worked by each Class Member as an LPM during the relevant statutory time period ("Database of Class Members"). The information provided to the Claims Administrator shall be based on Defendants' payroll, personnel, and/or other business records.

Within fifteen (15) business days of receipt of the Database of Class Members, the Claims Administrator will provide the Class Members via first class U.S. Mail, at their last known address, the Court-approved (a) Class Notice; (b) Claim and Consent to Join Settlement Form; (c) Change of Address Form; and (d) Request for Exclusion (collectively "Settlement Documents").

Class Members who choose to participate in the settlement must do so by timely submitting a Claim and Consent to Join Settlement Form within sixty (60) calendar days from the date of mailing of the Class Notice.

Rule 23 Class Members will have forty-five (45) calendar days from the date of mailing of the Class Notice within which to opt-out of the Settlement set forth in this Stipulation. Those Class Members who wish to exercise this option must timely submit (e.g., ensure that it is postmarked by the date that is 45 calendar days from the mailing date) a signed written request to

be excluded to the administrator on or before forty-five (45) calendar days from the date of mailing.

Rule 23 Class Members, except for the Named Plaintiffs, who have not filed a Request for Exclusion will have forty-five (45) calendar days from the date of mailing the Settlement Documents within which to file an objection to the terms of the settlement set forth in the Stipulation and Settlement Agreement. No other Class Members may file an objection.

To object, an individual must file a written objection and a notice of intention to appear at the Final Approval and Fairness Hearing, send copies to counsel for each party as set forth in the Class Notice, and appear at the Final Approval and Fairness Hearing.

**10.  PAYMENTS BY DEFENDANTS TO PARTICIPATING CLAIMANTS, ADMINISTRATOR AND CLASS COUNSEL**

Within seven (7) business days of the date on which the Judgment becomes a Final Judgment ("Effective Date"), Defendants shall pay to the Claims Administrator, the Court-approved Class Representatives' Enhancement Awards, the Administrative Costs, attorneys' fees and costs and the amount needed to pay the Settlement Payments to the Participating Claimants

Within fifteen (15) business days after Defendants has made the payment to the administrator, the administrator shall mail to each Participating Claimant at his/her last known address, or updated address if obtained, his/her individual settlement payment.

Finally, within ten (10) business days from the Effective Date, the Claims Administrator shall wire the funds for attorneys' fees and costs to Class Counsel.

**11.  RELEASE OF CLAIMS**

In exchange for the settlement, Participating Claimants and members of each of the Rule 23 classes who do not opt-out will release Defendants from all wage-related claims asserted or that could have been asserted in these lawsuits up to the date of Final Approval.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### 1.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT

Plaintiffs seek *preliminary* approval of the Stipulation and Settlement Agreement under both the FLSA and Fed. R. Civ. P. 23(e). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910).  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  The ultimate determination whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968). As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Stipulation and Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

### 2.    THE STANDARDS FOR PRELIMINARY APPROVAL UNDER FED. R. CIV. P. 23

As part of the Stipulation and Settlement Agreement and Plaintiffs' Consolidated Class and Collective Action Complaint, Plaintiffs seek (for settlement purposes only) the certification of various classes under the wage and hour laws of California, Illinois, New Jersey, New York (Sears full line stores only) , Oregon, Pennsylvania and Washington.  Fed. R. Civ. P. 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes.  Specifically, Fed. R. Civ. P. 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

In determining whether to preliminarily approve a settlement, the Seventh Circuit has directed courts to assess: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the opinion of competent counsel; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). All of these factors warrant preliminary approval of the proposed settlement. A court must not focus on an individual component of the compromise, but must instead view the proposed settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. ***Hispanics United of DuPage County v. Village of Addison, Ill.,*** 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook v. McCarron,* 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997).

A.    THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL ARE SATISFIED

(1)    **Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *Id.* at 1197-98 (*quoting EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). Accordingly, in deciding whether to approve the settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiffs' claims. *Id.* at 1197. A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The consideration to be paid by Defendants to the Settlement Class here is considerable—both in terms of its monetary and non-monetary value. The formulas used to compensate the Participating Claimants are reasonable, consistent with other wage and other settlements approved by Courts in this district and others, and applied in a manner which does not discriminate against any of the participating claimants. Specifically, after making the deductions described above, the settlement provides for a Net Settlement Amount of approximately $3,021,333.00. This amount will then be divided by the total number of work weeks at issue—144,000 (this includes the additional California weeks described above) yielding

an estimated work week value of $21.00/week for each week worked during the relevant statutory time period. This represents an estimated average payout of over $1,800.00.

Additionally, as described in the attached Stipulation, Defendants have implemented some important changes which impact the LPM position. These changes include (a) the allocation of 120 payroll hours (as opposed to 80) to those stores employing a salaried exempt LPM; (b) changing the reporting relationship of the LPM so that the LPM now reports directly to the District Loss Prevention Manager—not the Store Manager; and (c) reducing the number of Risk Levels to six from sixteen, thus reducing the total number of salaried exempt LPMs.

Further, the reasonableness of the settlement is underscored by the fact that Defendants have various defenses to the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory and civil penalties. For instance, Defendants had successfully litigated a challenge to the exempt classification of the LPM position in *Benjamin v. Kmart* Corporation, C.A. 4:05-cv-182, United District Court for the Southern District of Georgia (July 17, 2006). Likewise, Defendants' classification decision was also supported by a recent Department of Labor Opinion Letter which also concluded that a similar LPM position was properly classified as exempt.

Moreover, had the parties not reached a settlement, Defendants fully intended to seek decertification of the conditionally certified FLSA collective action, and would have vigorously opposed Plaintiffs' motion for class certification on a number of grounds. If Defendants' anticipated decertification motion was granted, each opt-in Plaintiff would be forced to pursue their claims on an individual basis—a difficult option for many who lack the financial resources

14

to pursue litigation on their own. Finally, if Plaintiffs' pending class certification had been denied, many class members would have not had an opportunity to pursue their claims against Defendants or obtain any recovery. These reasons further support why this settlement is fair and reasonable and in the best interests of the Named Plaintiffs, Existing Opt-Ins, and Class Members.

### (2)     The Likely Complexity, Length, and Expense of Continued Litigation

There is no reason to doubt that further litigation of this lawsuit would be both costly and time-consuming. As an initial matter, it goes without saying that misclassification class and collective actions involving challenges to allegedly corporate-wide human resources practices are complex. They often require, as in this case, the review of countless statutes, regulations, and case law. The parties are required to analyze and litigate issues concerning liability, damages, certification, discovery and a host of other issues which are unique to wage and hour litigation. There are few "bright line" tests, and, as such, this type of litigation can be very challenging and difficult.

Here, both parties have already expended considerable time and resources litigating the claims at issue. Josephson Decl., ¶¶8-9.Thousands of hours of attorney and paralegal time have been consumed during the pendency of this lawsuit. The parties have made numerous court appearances, conducted numerous conference calls, and exchanged hundreds of emails and correspondence. 40 depositions have been taken throughout the country. *Id.* Hundreds of thousands of documents have been exchanged and reviewed. Further, as the docket entries in this case confirm, virtually every conceivable legal issue has been litigated and thoroughly briefed. Without a settlement, there is no doubt that the parties would continue litigating this lawsuit for quite some time with the same tenacity.

### (3)    The Opinion of Competent Counsel

Plaintiffs' Counsel are experienced in class action litigation and relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement.  In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. *Id.* at ¶12. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this settlement by Plaintiffs' Counsel.  Counsel exercised their experience based on their knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims, and the time and expense of protracted litigation, discovery, trial and appeals.  *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019-1020 (N.D. Ill. 2000)(when experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight).

### (4)    The Stage of the Proceedings and Discovery Completed

As discussed above, prior to settlement the parties completed over forty depositions of Plaintiffs and various corporate witnesses.  In addition to depositions, the parties exchanged a substantial amount of written discovery which resulted in the production of literally hundreds of thousands of documents and electronically stored information pertaining Defendants' practices, policies, procedures, payroll records, emails and other business records.  Further, prior to settlement Plaintiffs' counsel also filed a comprehensive class certification motion which detailed the extensive information and documentation generated during the course of discovery.

Thus it cannot be gainsaid that prior to reaching a settlement, the parties investigated the relevant facts and legal issues through every means available.  Such an undertaking yielded

substantial information which allowed the parties to discuss intelligently and freely the pros and cons of settlement.

### B. THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF RULE 23(A) AND RULE 23(B)(3) AND SHOULD BE CERTIFIED

A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23(b); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiffs' claims are typical of the class's claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). Fed. R. Civ. P. 23(a)(1) – (4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario,* 963 F.2d at 1017. The parties' settlement is a relevant consideration in the class certification analysis. *See Amchem Prods., Inc.*, 521 U.S. at 619-20. Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

The proposed settlement classes in this case meet each of the statutory requirements for class treatment.

#### (1) Numerosity

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). Impracticability does not mean "impossibility,"

but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill. 1992). In determining whether a plaintiff has satisfied the numerosity requirement, a court may consider factors including the size of the class, geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 WL 628016, at *2 (N.D. Ill. Feb. 2, 2005)(Darrah, J.)(certifying IMWL class where documents showed 39 employees owed overtime pay); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

In this case, the parties estimate that the Rule 23 classes consist of hundreds of class members in multiple states. This is sufficient to satisfy the numerosity requirement, as joinder of this many parties would be impracticable.

### (2) Commonality

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) ("*Dukes*"). This requirement is permissively construed. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545; *Ross v. Citizens Bank, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (in context of state wage and hour off-the-clock claim: "To satisfy the commonality element, it is enough for plaintiffs to present just one

18

common claim.") (citing *Dukes*, 131 S. Ct. at 2556); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999)("The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members"); *Youngblood v. Family Dollar Stores, Inc*., 2011 U.S. Dist. LEXIS 115389, at *8 (S.D.N.Y. Oct. 4, 2011) (court certified retail store manager misclassification claim because the "the crux of [the] case is whether . . . company-wide policies, as implemented, violated Plaintiffs' statutory rights").

Here, the primary questions of law and fact central to the claims against Defendants include:

    a.    Whether Defendants employed the Class Members within the meaning of the applicable statutes, including the FLSA;

    b.    Whether the Class Members were uniformly, willfully and wrongfully classified by Defendants as exempt from overtime compensation;

    c.    Whether Defendants failed to pay the Class Members all premium overtime compensation due to them by virtue of their uniform designation as exempt;

    d.    Whether the Class Members were expected to, and/or were mandated to, regularly work overtime hours each workweek;

    e.    Whether Defendants failed to pay the Class Members for all hours worked;

    f.    Whether Defendants violated any other statutory provisions regarding compensation due to the Class Members; and

    g.    Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed Class Members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2), for settlement purposes.

### (3)    Typicality

The Rule 23(a)(3) requirement of typicality is easily satisfied here. The claims of the Named Plaintiffs and proposed class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).  Named Plaintiffs meet the typicality requirement here (at least for settlement purposes) because they, like the many other LPMs employed by Defendants, were not paid overtime because of Defendants' policy of classifying LPMs as exempt.  Named Plaintiff's legal claims here are typical of those of the class as a whole because they apply the same legal theory to the same policies and practices. This is sufficient to meet the requirement of typicality. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is meant to insure that the claims of the class representative have the "same essential characteristics as the claims of the class at large.").

### (4)    Adequacy

#### a.    <u>Plaintiffs' Counsel is Experienced and Qualified</u>

Counsel for the Named Plaintiffs, the Existing Opt-Ins and the proposed classes are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts. Class Counsel has substantial class action experience litigating, trying and settling wage and hour cases similar to this one.  Moreover, Class Counsel has been primarily responsible for litigating this lawsuit against Defendants and has superior knowledge of the relevant facts and legal issues.

#### b.    <u>There is No Conflict of Interest Between Named Plaintiffs and the Class</u>

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a

20

party's claim of representative status.'" *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995)). The Named Plaintiffs have shown themselves to be adequate representatives of the class, as they share interests with the class and have pursued those interests vigorously. Named Plaintiffs have also devoted time and effort in prosecuting the class claims including assisting counsel with investigating and litigating the misclassification claims at issue, giving depositions and answering discovery.

### (5)      Rule 23(b)(3) Requirements Have Been Satisfied

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy. The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem Products, Inc.*, 521 U.S. at 623. Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

Here, the alleged companywide policies affected the claims of Defendants' current and former LPMs. Thus, while there may be some variation between individual class member's

claims, such as the actual amount of damages, common questions of law and fact predominate. Named Plaintiffs maintain that these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual LPMs.

The court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages. These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* at 1023. The Stipulation and Settlement Agreement provides the Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Class Member will obtain necessary and timely relief at the conclusion of the litigation process.

The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs would surely surpass the average recovery for each class member.

For these reasons, a settlement class should be certified.

### 3. THE SETTLEMENT SHOULD ALSO BE APPROVED UNDER THE FLSA

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be ...." 29 U.S.C. § 216(b). FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages

under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 350, 1353 (11th Cir.1982). If a settlement in an employee FLSA suit does reflect "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

For the reasons described above, the parties' proposed settlement should also be given approval under the FLSA.

### 4. THE PROPOSED NOTICES PROVIDE ADEQUATE NOTICE TO THE MEMBERS OF EACH CLASS

#### A. THE NOTICE SATISFIES DUE PROCESS

The parties propose that the Claims Administrator send, by certified mail, to each Class Member, as defined above and in the Stipulation and Settlement Agreement, the Notice and Claim Forms attached thereto.

The parties propose that these documents be sent to all known and reasonably ascertainable members of the proposed Class Members based on Defendants' records and the criteria described in detail in the Stipulation and Settlement Agreement.

The Notice and Claim Forms will be sent by First Class Mail and the Stipulation and Settlement Agreement provides that the Claims Administrator will endeavor to ensure that all Class Members receive notice by taking all reasonable steps to trace the addresses of any Class Member for whom a Notice or Claim Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches. The Claims Administrator will then promptly re-mail the Notices and Claim Forms to each Class Member for whom new addresses are found.

This notice plan is consistent with – if not more robust than – class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the

best notice practicable. *See also, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE Case 26 CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'")(quoting Fed. R. Civ. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co*., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009)(approving issuance of notice to class using a similar method as applied here); *In re M.L. Stern Overtime Litig*., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009)(finding similar mail procedure as applied here to be the "best notice practicable").

### B. THE NOTICE IS ACCURATE, INFORMATIVE AND EASY TO UNDERSTAND

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. In accordance with this rule and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to or opt-out of the state classes. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326-27 (3d Cir. 1998). Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-into the action. 29 U.S.C. §216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Stipulation and Settlement Agreement, including the monetary and other relief the settlement will provide Participating Claimants as well as an explanation of the method of allocating and paying net settlement amount monies to class members who submit a valid and

24

timely claim form, the procedures and deadlines for opting-out of the various Rule 23 classes and submitting objections, the consequences of taking or foregoing the various options available to members of the classes, and the date, time and place of the final settlement approval hearing. *See* MANUAL FOURTH § 21.312. Further, pursuant to Fed. R. Civ. P. 23(h), the proposed Notice also sets forth the maximum amount of attorneys' fees and costs that may be sought by present party plaintiffs and their counsel.

Accordingly, the Notice form and procedure complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See*, *e.g.*, 4 *Newberg on Class Actions* (Fourth) §§ 8.21, 8.39; MANUAL FOURTH §§ 21.311-21.312.

### 5. A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to determine that final approval of the settlement is proper. The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the settlement, including the fairness, adequacy and reasonableness of the settlement. At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Fed. R. Civ. P. 23(h) as well as for the award to the Named Plaintiffs, Existing Opt-Ins, and other Participating Claimants. Accordingly, the parties request that the Court schedule the final fairness hearing for no earlier than 100 days from the date of this motion, as required by 28 U.S.C. §1715(d).

### 6. SCHEDULE OF EVENTS

For all of the foregoing reasons, the parties request that the Court adopt the following schedule for purposes of effectuating the various steps in the settlement approval process described above.

| EVENT | DEADLINE |
|---|---|
| Mailing of Notices | No more than 15 business days after Defendants provide the Class Member information to the administrator. Defendants must provide Settlement Class Member information to the Claims Administrator no more than 10 business days after the Order preliminarily approving the settlement. |
| Deadline for filing Objections | All objections must be filed with the Court and received by Class Counsel and Defendants within 45 calendar days from the date of mailing of the Notice and Claim form. |
| Deadline for requests to opt-out of the Settlement | All requests for exclusion must be received by the Claims Administrator within 45 calendar days from the date of mailing of the Notice and Claim form. |
| Deadline to file Motion for Attorneys' Fees and Costs | Within 45 days from the date of mailing of the Notice and Claim form. |
| Deadline to file Motion for Final Approval of Settlement | Within 10 calendar days after the Notice Response Deadline |
| Final Approval Hearing | _____, 2014 |

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the parties respectfully request that this Court (i) approve the form and content of the proposed Notice, the form and content of the proposed Claim and Consent to Join form and all other related documents, and the manner and method of distributing Notice of this settlement to the Class Members; (ii) direct the mailing of the Notice, the Claim and Consent to Join Form and the Opt Out Form by first class mail to members of the Class; (iii), preliminarily approve the terms of the Stipulation and Settlement Agreement, including the provisions for attorneys' fees, costs and enhancement awards; (iv) preliminarily certify the Classes for purposes of settlement only; (v) approve Michael A. Josephson and Fibich, Leebron, Copeland, Briggs & Josephson, LLP and Douglas Werman and Werman Salas, P.C., to serve as Class Counsel and the Named Plaintiffs as the class representatives of each of the proposed Rule

23 classes; (vi) approve the administrator; and (vii) preliminarily set a date for a Final Fairness

Hearing to take place no earlier than 100 days after the date of this Motion.


Respectfully submitted,

By: */s/ Michael A. Josephson*
    One of the Attorneys for Plaintiffs

Michael A. Josephson
State Bar No. 24014780
**FIBICH, LEEBRON, COPELAND**
**BRIGGS & JOSEPHSON, L.L.P**
1150 Bissonnet
Houston, Texas 77005
713-751-0025 (Telephone)
713-751-0030 (Facsimile)

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS, P.C**.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties.

*/s/ Michael A. Josephson*
Michael A. Josephson